1  WRIGHT & L'ESTRANGE
2    John H. L'Estrange, Jr. (SBN 049594)
     (jlestrange@wllawsd.com)
3    Alexander T Gruft (SBN 223096)
     (agruft@wllawsd.com)
4  401 West A Street, Suite 2250
   San Diego, California 92101
5  (619) 231-4844
   (619) 231-6710 (fax)
6
   Attorneys for Plaintiff KH Marine Ltd.
7

FILED

13 FEB 19 PM 4: 21

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

8                UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

CV13-01201 -(AS(SSx)

10  KH MARINE LTD., a Cayman Island     ) Civil Action No.
    corporation,
11                                       ) IN ADMIRALTY
                Plaintiff,
12                                       ) COMPLAINT FOR DAMAGES
          v.
13                                       )
    M/V BBC CAMPANA, Antigua and        )
14  Barbuda (IMO 9291963), its engines, )
    machinery, appurtenances, etc., *in rem*, )
15  YACHT PATH INTERNATIONAL,           )
    INC., a New York corporation, d/b/a )
16  Yacht Path Marine Group; and UNITY  )
    SHIPPING LINES INC., a Florida      )
17  corporation, *in personam*,         )
                                         )
18              Defendants.              )
                                         )
19                                       )

20

21       KH Marine Ltd. ("KH Marine"), a Cayman Islands corporation, alleges

22  against M/V BBC Campana, Antigua and Barbuda (IMO 9291963), its engines,

23  machinery, appurtenances, etc. ("Vessel"), *in rem*; Yacht Path International,

24  Inc., a New York corporation, d/b/a Yacht Path Marine Group, ("Yacht Path"),

25  and Unity Shipping Lines Inc., a Florida corporation ("Unity Shipping"), as

26  follows:

27

28

COMPLAINT FOR DAMAGES

## JURISDICTION AND VENUE

1.     This is an action arising under the Carriage of Goods by Sea Act (46 U.S.C. §§ 30701-30707) ("COGSA").[1]  Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 1337.  Jurisdiction is also proper in this Court because this action is an admiralty and a maritime dispute within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.     Venue is proper in this Court pursuant to the parties' contract which states at Clause 21, paragraph 1, "Whenever US COGSA is at issue this Agreement is to be governed by United States law and the United States District Court for the Central District of California is to have exclusive jurisdiction to hear all disputes in respect thereof."  A true and correct copy of the parties' Booking Note is appended hereto as Exhibit "A".

## PARTIES

3.     At all times alleged herein, KH Marine was and is a corporation organized and existing under the laws of the Cayman Islands, maintaining its principal place of business in George Town, Cayman Islands.

4.     Defendant Vessel, its engines, machinery, appurtenances, etc., is a 456-foot cargo ship, is and was at all times mentioned herein, a documented vessel under Antigua and Barbuda law.

5.     At all times alleged herein, Yacht Path was and is a corporation organized and existing under the laws of the State of New York, maintaining its principal place of business in Ft. Lauderdale, Florida.

6.     At all times alleged herein, Unity Shipping was and is a corporation organized and existing under the laws of the State of Florida,

---

[1] COGSA's provisions, 46 U.S.C. App. §§ 1300-1315, have been recodified at 46 U.S.C. §§ 30701-30707.  See Act of Oct. 6, 2006, Pub. L. No. 109-304, 120 Stat. 1485.

2

COMPLAINT FOR DAMAGES

1   maintaining its principal place of business in Palm Beach Gardens, Florida.

2   Yacht Path and Unity Shipping may be referred herein collectively as "the

3   Carriers".

4                       **FACTUAL BACKGROUND**

5       7.     On or about December 8, 2011, Yacht Path issued a Booking Note

6   to KH Marine to serve as the Contract of Carriage for the ocean shipment of the

7   M/Y ESCAPE (the "Yacht") from Ft. Lauderdale, Florida to Singapore. A true

8   and correct copy of the Booking Note is appended hereto as Exhibit "A" and

9   incorporated herein by reference. KH Marine is the owner of the Yacht.

10       8.     The Booking Note designated KH Marine as the owner of the

11   Yacht, and Yacht Path and Unity Shipping as the Carriers. In connection with

12   the carriage of the Yacht to Singapore, Lloyd's issued a cargo insurance policy

13   to Yacht Path and Unity Shipping, with KH Marine as the loss payee, declaring

14   that the nature and value of the Yacht before shipment to be $3,000,000 USD.

15   The ocean freight was $85,000 USD.

16       9.     Clause 2, paragraph 4, of the Terms and Conditions incorporated

17   into the Booking Note provided that "[a]ll carriage under this Booking Note

18   shall have effect subject to the provisions of the Carriage of Goods by Sea Act

19   of the United States, 46 U.S.C. §§ 1300-1315." According to the Booking Note,

20   COGSA shall govern before the Yacht is loaded on and after it is discharged,

21   whether the Yacht is carried on deck or under deck and throughout the entire

22   time the Yacht is in the custody of the carrier. The Terms and Conditions

23   further provided that the Yacht shall be loaded onto the designated vessel "under

24   the direction" of Yacht Path and the Vessel would proceed to its port of

25   designation. Yacht Path also promised, under the terms of the COGSA, to

26   "properly and carefully load, handle, stow, carry, keep, care for, and discharge

27   the goods carried." 46 U.S.C. § 30701, Note § 3(2).

28

3
COMPLAINT FOR DAMAGES

10. COGSA prohibits carriers from inserting in a bill of lading or shipping document a provision avoiding its liability for loss or damage arising from negligence or fault in loading, stowage, custody, care, or proper delivery. Any such provision is void.

11. Upon information and belief, KH Marine believes, and did believe at the time of loading based on representations made by the Carriers, that the Yacht would be properly stowed on board the Vessel.

12. In scheduling the transportation of the Yacht, the Carriers reviewed the information provided on the Booking Note issued for transport of the Yacht from Florida to Singapore.

13. On or about December 8, 2011, KH Marine paid Yacht Path the freight rate of $85,000 USD for carriage of the Yacht.

14. On or about December 8, 2011, the Yacht was delivered to Carriers in good order and condition for shipping aboard the Vessel. The Yacht was loaded onto the Vessel under the direction of the Carriers bow forward atop the hatches of the Vessel at Ft. Lauderdale, Florida. In this stowage position, the Yacht was negligently stowed in a significant bow-down position. The Yacht took on water during the voyage which would normally have drained out aft, but which, because of the Yacht's orientation, remained aboard. The Yacht was discharged in Singapore on February 19, 2012. On discharge, the Yacht was found flooded and with mold throughout resulting in a total loss of the Yacht. Appended hereto as Exhibit "B", and incorporated herein by reference, is a true and correct copy of a report prepared by Patton Marine, Inc. on May 4, 2012 describing the stowage of the Yacht and the resulting water and mold damage.

15. As a direct and proximate result of Defendants' failure to properly stow and care for the Yacht, KH Marine has been damaged, the exact amount of said damages suffered by KH Marine to be proven, and established at time of

4

COMPLAINT FOR DAMAGES

trial, but in an amount no less than $3,500,000 USD.

## FIRST CLAIM FOR RELIEF

(Breach of Contract Against Yacht Path)

16.   KH Marine incorporates and realleges all prior paragraphs the same as though set forth in full.

17.   On or about March 20, 2008, KH Marine and Yacht Path entered into a Contract of Carriage for the Yacht.

18.   KH Marine performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Booking Note.

19.   Yacht Path materially and substantially breached and deviated from the contract by failing to properly load, handle, stow, carry, keep, care for, and discharge the Yacht in good order and condition to its discharging port as required by the Booking Note and COGSA.  As a direct and proximate result of Yacht Path's breach of the Booking Note, KH Marine was damaged in an amount to be proven at the time of trial, but no less than $3,500,000 USD, the approximate result of compensatory damages to be ascertained and proven at the time of trial.

## SECOND CLAIM FOR RELIEF

(Negligence Against All Defendants)

20.   KH Marine incorporates and realleges all prior paragraphs the same as though set forth in full.

21.   Defendants owed KH Marine a duty of care to properly and carefully load, handle, stow, carry, keep, care for, and discharge the Yacht.

22.   Defendants failed and neglected to exercise due care to properly load, discharge and deliver the Yacht pursuant to the contract in like good order

5

COMPLAINT FOR DAMAGES

and condition as when received and thereby were negligent in their acts and/or omissions.

23.     Defendants' negligence was a proximate cause of the damage sustained by KH Marine.

24.     As a direct and proximate result of Defendants' negligence, KH Marine was damaged in an amount to be proven at the time of trial, but no less than $3,500,000 USD, the approximate result of damages to be ascertained and proven at the time of trial.

## PRAYER

WHEREFORE, KH Marine prays for judgment against all Defendants as follows:

1.     An award of damages in the amount of no less than $3,500,000 USD, or according to proof at the time of trial, plus interest on all sums expended at the legal rate;

2.     KH Marine be awarded its costs of suit; and

4.     Such other and further relief as this Court deems just and proper.

Respectfully submitted,

WRIGHT & L'ESTRANGE
Attorneys for Plaintiff KH Marine Ltd.

Dated:  February 19, 2013           By _____
                                            Alexander T Gruft

## INDEX OF EXHIBITS

| | |
|---|---|
| BOOKING NOTE DATED DECEMBER 8, 2011 | Exhibit "A" |
| PATTON MARINE, INC. TECHNICAL LETTER DATED MAY 4, 2012 | Exhibit "B" |

7

COMPLAINT FOR DAMAGES

**EXHIBIT** A



# YACHTPATH
MARINE GROUP

| 1. Date |
|---|
| December 8, 2011 |

| 2. Carrier | 3. Yacht Owner |
|---|---|
| Unity Shipping Lines Inc.<br>2401 PGA Blvd Suite 155<br>Palm Beach Gardens, FL 33410 | KU Marine LLC  Ltd.<br>Unit 11, Galleria Plaza<br>Georgetown  Cayman Islands |

| 4. Vessel's Name | 5. Sailing date (approx.)(See Terms and Conditions Clause 3) |
|---|---|
| M/V BBC Campana | On/about December 2011 |

| 6. Loading Port | 7. Discharging Port |
|---|---|
| Port Everglades | Singapore |

**8. Yacht Description (see Terms and Conditions Clause 5)**

BOOKING NOTE NUMBER:

Yacht Name: "Recaps"
Size & Manufacture: 100' Broward
Hull ID/ Official Number: 241341

LOA (overall length measured in feet): 100'
BOA (extreme beam measured in feet): 20'
Weight (actual weight in Metric Tons): 144 Tons

**9. Freight Rate (see Terms and Conditions Clause 11)**

Ocean Freight: $85,000.00 (Rate valid for pre-booking/pre-payment in full by December 8, 2011)
Freight includes Cargo Insurance Premium for a value of $5,000,000.
Wharfage Charges: $750.00
Declared Value: <About No Blank – If Value Declared Add 15% to Freight rate>
Basis: Water/Water
Includes: Sea fastening/ Un-sea fastening

All payments will be discount less, non-returnable and deemed fully earned upon execution of this Booking Note. Vessel and/or Yacht lost or not lost.

**10. Yacht owner's representatives at loading port**

**11. Additional Clauses, if any**

Its hereby agreed that this Contract of Carriage is subject to the Terms and Conditions of this Booking Note only. No previous agreements, representations or oral modifications are allowed unless expressly stated herein.

| Signature (Carrier) | Signature (Yacht Owner) |
|---|---|
| Dennis Cummings | |
| Print name (Carrier) | Print name (Yacht Owner) |
| As Authorized Sales Agent to Carrier only | The Yacht Owner or other party who executes this Agreement, warrants, that all statements and representations hereon, are true and correct, and that he is, or has been provided with the legal authority to contract on behalf of, and legally bind to this Agreement, the Person(s) or Entity(s) owning or otherwise entitled to possession of the Yacht. |

3 | P a g e

Initials (Yacht Owner)_____



## TERMS AND CONDITIONS

The Booking Note and Terms and Conditions form the only evidence of the Contract of Carriage.
It is understood that no Bill of Lading will be issued. A non-negotiable cargo receipt is not evidence of the Contract of Carriage.

**Clause 1: Definitions**

1. "Agreement" collectively refers to this Booking Note and Terms and Conditions.
2. "Carriage" means the whole or any part of the transportation, loading, unloading, storing, handling and any and all other services whatsoever undertaken by the Carrier in relation to the Yacht.
3. "Carrier" means Yacht Path and Unity Shipping Lines™.
4. "Contract of Carriage" means these Terms and Conditions and Booking Note (whether physically attached hereto or not) which collectively form the Agreement.
5. "Freight" includes all charges payable, including dead freight, to the Carrier in accordance with this Contract of Carriage.
6. "Marine Cargo Insurance" means an All Risks insurance policy which indemnifies the Yacht Owner for damage to or loss of the Yacht from an insured peril while transported on deck in Ocean Carriage.
7. "Ocean Carriage" means the same as Port to Port Shipment.
8. "Package" is defined as the M/Y – S/Y "Escape".
9. "Vessel" means any water borne craft utilized for carriage under this Booking Note.
10. "Voyage" means the on deck ocean carriage from Port Everglades to Singapore
11. "Yacht" means the boat (or other form of watercraft) and its contents being transported by Yacht Path and Unity Shipping™.
12. "Yacht Owner" includes an individual, corporation or other legal entity and shall include the shipper, receiver, consignee and/or owner of the Yacht to be carried, and the party executing this Agreement warrants and represents it is authorized to represent, bind, and act on behalf of any and all of the parties enumerated herein.

**Clause 2: Scope of Agreement**

1. It is agreed between Yacht Path and Yacht Owner that the Carrier will charter space to the Yacht Owner on the deck of said Vessel designated in the attached booking note, or any other vessel that the Carrier may nominate as an alternative at its discretion.
2. The Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port listed on the Booking Note, load the Yacht under the direction of the Carrier, proceed to the discharge port listed on the Booking Note and discharge the Yacht under the direction of the Carrier.
3. The parties to this agreement fully recognize and understand that the Carriage of the Yacht is not an ordinary commercial shipment made in an ordinary course of trade. The unique characteristics and condition of the Yacht and the terms and conditions under which the Carriage of the Yacht is to be performed reasonably justify this special agreement.
4. All carriage under this Booking Note shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, 46 U.S.C. §§ 1300-1315 ("US COGSA"). Except as may be otherwise specifically provided herein, this law shall govern and have effect before the Yacht is loaded on and after it is discharged from the Vessel, whether the Yacht is carried on deck, between deck or under deck and throughout the entire time the Yacht is in the custody of the Carrier.
5. It is expressly understood and agreed that the Carrier shall not insure the Yacht and that is the sole duty and obligation of Yacht Owner to procure and maintain an adequate marine cargo insurance policy upon the Yacht for the duration of the Voyage.

**Clause 3: Delivery, Loading and Discharging**

1. Carrier, in accordance with U.S. customs law, shall its business to the Carriage of said Yacht between loading port and discharging port. Carrier will not be directly involved with the delivery of Yacht to and from the loading berth or anchorage of the Carrier's vessel.
2. The sailing date contained in Box 6 of the Booking Note and in any other documentation or information provided or distributed by the Carrier or its agents is only an estimate of the approximate date that the Vessel will depart or arrive. The Carrier and its agents specifically do not warrant the date upon which the Yacht will be loaded or discharged. As such, Carrier, Vessel, and Yacht Owner agree that no claims whatsoever for loss of use or other consequential damages shall be valid or enforceable against Carrier or the Vessel. Yacht Owner specifically, and expressly, waives, by execution of the Booking Note, any claim of deviation due to delay, for loss of use (whether recreational or commercial) or consequential damages of any nature against the Carrier or Vessel arising out of a delay in the performance of this Agreement.
3. The Yacht, under the direction of the Carrier will be brought alongside the Vessel, free of any risk, liability and expense whatsoever of the Carrier. The Vessel shall be allowed to sail if the Yacht is not brought alongside as required and in time for loading.
4. The Carrier may provide identification decals or other identifying marks, at its sole discretion, which the Yacht Owner shall place on the Yacht's hull in such manner to indicate the Yacht's center of gravity and the specified positions for placement of the slings necessary to lift the Yacht.
5. The Yacht Owner, or his agent, consignee, contractor, subcontractor or such other receiver as may be appointed by the Yacht Owner, shall take delivery of the Yacht upon discharge as required by the Carrier and within reach of said gear or tackle, the failure of which to do so will entitle the Carrier to leave the Yacht at place of discharge at the sole expense of the Yacht Owner.
6. The Carrier shall provide the Yacht Owner with decals which the Yacht Owner shall place on the Yacht's hull in such manner to indicate the Yacht's center of gravity and the positions for placement of the slings necessary to lift the Yacht.

4 | Page

Initials (Yacht Owner) _____



7.  In the event that the Yacht Owner has failed to accurately provide the information as required by Clause 5, the Carrier shall be entitled to hire a diver, at the Yacht Owner's expense, to determine the best position for placement of slings to lift the Yacht.

8.  The Master of the Vessel shall be entitled, without any obligation, to give instructions regarding loading, lashing, securing and discharging, whose instructions shall be followed by the Yacht Owner at the Yacht Owner's own risk and expense. The Master has the right to appoint a superintendent at the Carrier's expense, said superintendent shall be entitled to supervise loading, lashing and discharge operations.

9.  The Yacht is subject to be lashed/unlashed and secured/unsecured as per Master's requirements upon the advice and consent of the Load Superintendent, but always free of any risk, liability, and expense whatsoever to the Carrier, Vessel and Master. Any time lost in waiting for loading/discharging, lashing/unlashing, securing/unsecuring shall be at Yacht Owner's sole expense.

10. In the event that the Yacht Owner, or his agent, consignee, contractor, subcontractor or such other designee is unable, or otherwise unavailable, to bring the Yacht alongside the Vessel for loading in accordance with the terms set forth herein, the Carrier reserves the right to retain a Captain, or other crew as necessary, to facilitate the movement of the Yacht alongside. If the Carrier exercises this option, the Yacht Owner agrees that the Carrier will be free of any risk, liability and expense associated with the performance of such operation.

11. Position of the Yacht on board the Vessel will be under the sole discretion of the Master of the Vessel and/or his agents, and the Yacht Owner specifically consents to above deck stowage at its own risk.

12. If the Carrier is to supply supports, cradles and/or cribbing as required, such provision is subject to the known particulars of the Yacht as described by the Yacht Owner. The Yacht Owner agrees that the Carrier will be free of any risk, liability and expense associated with the selection, procurement, placement and assembly of these items and any loss or damage of whatsoever nature and howsoever caused arising out of said supply will be for the sole account and risk of the Yacht Owner.

13. Loading and Discharging shall always take place at the discretion of the Master of the Vessel and at the expense of the Carrier unless otherwise indicated in the Booking Note.

14. The Carrier, Vessel, its servants, crew members, agents and subcontractors shall in every event be discharged from all liability whatsoever in respect to the delivery condition of the Yacht as regards to the effects of wind, weather, soot, dust or other contaminants and pollutants regardless of whether made by nature or man, borne by air or water, and shall bear no costs or expense attributable to the cleaning or repainting of the Yacht.

**Clause 4: Warranty**

The Yacht Owner or other party whose signature is affixed to the Booking Note warrants, that in agreeing to these Terms and Conditions, he is, or has been provided the legal authority to contract on behalf of, and legally bind to this Agreement, the Person(s) or Entity(s) owning or otherwise entitled to lawful possession of the Yacht.

**Clause 5: Description of the Yacht**

1.  The Yacht Owner, upon booking, shall provide Carrier with an up-to-date description of the Yacht and its particulars. This means that the Yacht Owner must inform the Carrier of any and all changes made to the Yacht that deviate from the original manufacturer's specifications and accurately state the particulars of the Yacht as it will be delivered alongside for loading. The Yacht Owner must also disclose any other information which might affect the loading or stowage of the Yacht on board the Vessel.

2.  The Yacht Owner, upon booking, is deemed to have guaranteed to the Carrier the accuracy of the Yacht's particulars, including, but not limited to, its overall length, extreme breadth, air draft, keel dimensions and weight.

3.  It is expressly understood and agreed that the Carrier shall not be liable for any loss or damage resulting from the Yacht Owner's error, omission and misrepresentation in respect hereof and that the Yacht Owner shall indemnify the Carrier against all loss, damages, and expenses arising or resulting from inaccuracies or omissions in stating such particulars.

4.  If such information is not provided, or provided inaccurately, the Carrier has the right to suspend its obligation of this agreement without releasing the Yacht Owner from his/her obligation under this agreement.

5.  The Carrier shall not be liable for any loss, damages, or expenses resulting from the Yacht Owner's misrepresentation in respect hereof.

6.  Failure to timely disclose information referred in the above paragraph shall (without prejudice to any other rights hereunder) release the Carrier from its obligation under this agreement.

**Clause 6: Condition of the Yacht**

1.  The Yacht Owner warrants the Yacht is fit for ocean carriage and shall ensure that prior to loading, the Yacht is properly trimmed in accordance with the Carrier's instructions, and made as light as possible, unless the Carrier agrees in writing otherwise. Prior to lifting, the Yacht Owner will secure and/or remove any loose items on board the Yacht.

2.  The Yacht Owner agrees to allow any surveyor, employee and/or agent of the Carrier to board the Yacht prior to and during the lifting operation for the purpose of conducting an inspection to prepare a "Yacht Condition Report". This is a report that will identify the condition of the Yacht prior to commencement of the lifting operation.

5|Page

Initials (Yacht Owner)_____



3.  The Yacht Owner shall deliver the Yacht free of any and all arms, ammunition, stowaways, hazardous goods, contraband, alcohol, prescription drugs and illegal substances. The Carrier reserves the right to inspect the Yacht prior to departure, and if any contraband is found will discharge it and notify the authorities. In respect to these aforementioned items the Carrier maintains a zero tolerance policy.

4.  Under this agreement the Yacht Owner will indemnify, defend and hold harmless the Carrier against any consequences of failure to comply with the aforementioned policy.

5.  The Yacht Owner warrants that all lashing and securing points on the Yacht are suitable to lash and secure the Yacht and that the hull is free from any material damage or defect which might affect its suitability for on deck ocean carriage.

6.  Yacht Owner warrants and represents that the Yacht is, and shall remain at all times relevant hereto, free of all liens, detentions or arrests.

7.  In the event that the Yacht is encumbered with an arrest or otherwise detained, the Carrier shall be relieved of any and all liability to the Yacht Owner resulting from said arrest or detention.

8.  The Yacht Owner shall defend, indemnify and hold both the Carrier and Vessel harmless from any liability resulting from the arrest, attachment or detention of the Yacht notwithstanding the lawfulness of the arrest or detention.

Clause 7: Liability and Insurance

1.  It is expressly understood and agreed that the Carrier shall have the benefit of all limitations to, and exonerations from, liability accorded to vessel owners, carriers, and charterers pursuant to any applicable statute or rule of law for the time being in force, and the same benefits apply regardless of the form of the Agreement. No part of this Agreement is intended as a Personal Contract.

2.  The Yacht Owner consents to the on deck carriage of the Yacht at the sole risk of the Yacht Owner. Neither the Carrier nor the Vessel shall be liable for any loss, damage, or liability of any nature no matter how caused, including, but not limited to, any unseaworthiness or want of fitness. Under no circumstances shall the Carrier be held liable for delay, loss of use, incidental or consequential damages.

3.  Throughout the duration of this agreement, the Yacht Owner shall procure and maintain adequate marine cargo insurance, covering the risks the Yacht Owner has assumed under this agreement, naming the Carrier, its agents and subcontractors, as additional insureds and waiving all rights of subrogation against them.

4.  It is expressly understood that the Yacht Owner is aware that standard all-risk or named peril marine insurance coverage may not insure against damage or loss occurring during ocean carriage of the Yacht and that the Yacht Owner shall be liable for all claims, losses, costs, damages, attorneys' fees, and expenses of every kind and nature resulting from its failure to procure and maintain adequate Marine Cargo Insurance cover.

5.  It is expressly understood and agreed that the Carrier shall not insure the Yacht nor act as an agent for the procurement of said marine cargo insurance cover.

6.  The parties agree that the Yacht, her engine(s), masts, anchors, cables, chains, rigging, tackle, apparel, equipment, and furnishings thereto appertaining, and any contents associated therewith tendered by Yacht Owner for shipping shall be considered the Package or customary freight unit as referred to in US COGSA and that in no event shall the Carrier be or become liable for any loss or damage to or in connection with the transportation of the goods shipped by the Yacht Owner in any amount exceeding USD $500 per Yacht, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the Yacht Owner before shipment and inserted in the Booking Note.

7.  In the case where the value of the Yacht has been declared, the quoted freight rate shall be increased by 15% of the declared value. The Carrier will obtain insurance for its own account covering any liability it may incur with respect to loss and damage to the goods shipped by Yacht Owner in the amount of USD$500 per yacht and shall not in any event be liable for any greater damages, unless the Yacht Owner has declared and paid for the declared value.

8.  The Carrier shall not be responsible for any loss or damage sustained by the Yacht Owner, or its charterers, customers, consignee agent or otherwise, through delay in the delivery of the Yacht however caused.

9.  The Yacht Owner hereby waives any claim for consequential damages whatsoever and agrees to defend, indemnify and hold harmless the Carrier, Vessel and any of their agents or servants from and against any and all claims, losses, costs, damages, attorneys' fees, and expenses of every kind and nature arising from said delay. In the event the Carrier is nonetheless held liable for delay, such liability shall be limited to a maximum of 5% of the freight paid or payable under the Booking Note.

10. The Yacht Owner shall further be liable for all expenses (including wreck removal), official fines or consequences which are incurred pursuant to this Agreement or by the nature of the Yacht or any contents of the Yacht or leakages or oil spills from the Yacht, as well as for all fines and/or losses which the Carrier, Vessel or Yacht may incur through non-observance of Customs and/or import-export regulations.

Clause 8: Liberties Clause

1.  The Carrier may at any time and without notice to the Yacht Owner:

a.) use any means of transport whatsoever;

b.) transfer the Yacht from one conveyance to another, including transshipment or carrying the same on a Vessel other than the Vessel named on the Booking Note or by any other means of transport whatsoever and even though transshipment or forwarding of the Yacht may not have been contemplated for herein;

c.) sail without pilots, proceed via any route (whether or not the nearest or most direct or customary or advertised route) at any speed and proceed to, return to and stay at any port or place whatsoever (including the Port of Loading herein provided) once or more often, and in any order in or out of the route or in a contrary direction to or beyond the Port of Discharge once or more often;

6 | P a g e

Initials (Yacht Owner)_____



d.) Load and unload the Yacht at any place or port (whether or not any such port is named on the reverse hereof as the Port of Loading or Port of Discharge) and store the Yacht at any such port or place for the account of others than the Yacht Owner from places en route or not en route;

e.) Comply with the orders or recommendations given by any government or authority or any Person or body purporting to act as or on behalf of such government or authority or having under the terms of the insurance on any conveyance employed by the Carrier the right to give orders or directions;

2. The liberties set out in this clause may be invoked by the Carrier for any purpose whatsoever whether or not connected with the Carriage of Goods, including, but not limited to, loading or unloading other yachts, cargo or goods, bunkering or embarking or disembarking any person(s), undergoing repairs, drydocking, towing or being towed, assisting other vessels, making trial trips, and adjusting instruments.

3. Anything done or not done in accordance with this clause or arising there from shall be deemed within the contractual Carriage and shall not be deemed or otherwise held a deviation.

**Clause 9: Unanticipated Circumstances**

1. In the event of an unanticipated circumstance, such as a change in regulations, orders or directions from the vessel owner or operator, orders or directions by underwriters for the vessel operator or owner or governmental authorities, strike, war, warlike operations, terrorist activities, Acts of God, blockades, lockouts, inability to load the Yacht due to Vessel's capabilities, condition or configuration, inadequacy or unavailability of cranes on board or on shore, difficulties to enter any port for any reason, or other difficulties or any event that may influence the Voyage before loading, Carrier shall at its sole discretion have the option of canceling the Booking Note, whereupon any prepaid freight shall be reimbursed to Yacht Owner and each party shall be released from any obligation under this Contract of Carriage.

2. The Carrier shall also have sole discretion to furnish a substitute for the Vessel named in the Booking Note, conditioned upon such substitute vessel being suitable for the contracted transportation. If any unanticipated circumstance as referred to herein may arise after the Yacht has been received by Carrier for execution of this Contract of Carriage, Carrier shall have liberty to return the Yacht to the Yacht Owner at the place the Yacht was received or any other convenient place. The Yacht Owner shall be informed of such event as soon as possible and after discharge any party shall be released from any obligation under this Booking Note, except for any non-paid freight, charges or expenses otherwise payable to the Carrier by the Yacht Owner.

**Clause 10: General**

1. The Carrier does not undertake that the Yacht or any documents relating thereto shall arrive or be available at any point or place at any stage during the Carriage or at the Port of Discharge or the Place of Delivery at any particular time or to meet any particular Vessel, permission, sale contract or credit of the Yacht Owner or any market or recreational or commercial use of the Yacht and the Carrier shall under no circumstances whatsoever and howsoever arising be liable for any direct, indirect or consequential loss or damage caused by delay. Yacht Owner warrants that it understands that any date provided by the Carrier for the loading, carriage and discharge of the Yacht is only an estimate due to the unique nature of ocean marine transportation and that no liability for delay will accrue to the carrier. If the Carrier should nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by such alleged delay, such liability shall in no event exceed a maximum of 5% of the freight paid or payable under the Booking Note.

2. Save as is otherwise provided herein, the Carrier shall under no circumstances be liable for direct or indirect or consequential loss or damage arising from any cause whatsoever or for loss of profits, rent or charter hire.

3. It is expressly agreed that under no circumstances whatsoever shall the Carrier be liable for costs and expenses associated with transportation, lodging, and meals incurred by the Yacht Owner or his agents and subcontractors.

4. Once the Yacht has been received by the Carrier for loading, the Yacht Owner shall not be entitled to impede, delay, suspend or stop or otherwise interfere with the Carrier's intended manner of performance of the Carriage or the exercise of the liberties conferred by this Agreement nor to instruct or require delivery of the Yacht at any place other than the designated Port of Discharge or Place of Delivery named on the Booking Note or such other Port or Place selected by the Carrier in the exercise of the liberties herein, for any reason whatsoever, including, but not limited to, the exercise of any right of stoppage in transit. The Yacht Owner shall indemnify the Carrier against all claims, liabilities, loss, damages, costs, delay, attorney's fees and/or expenses caused to the Carrier, his subcontractors, servants or agents or to any other cargo or to the owner of such cargo during the Carriage arising or resulting from any stoppage (whether temporary or permanent) in the Carriage of Goods whether at the request of the Yacht Owner, or in consequence of any breach by the Yacht Owner or in consequence of any dispute whatsoever in respect of the Yacht involving any one or more party defined herein as the Yacht Owner or between themselves or with any third party.

5. These Terms and Conditions shall govern the responsibility of the Carrier in connection with or arising out of the supplying of any equipment related to the lifting, stowage or transportation of the Yacht.

**Clause 11: Freight**

1. Yacht Owner will effect a 20 (twenty) percent down-payment on the freight payable under the Agreement into Carrier's bank upon execution of this agreement. The remaining 80 (eighty) percent will be due not less than 30 days prior to the departure date indicated on the Booking Note unless otherwise agreed to in writing by the Carrier or its Authorized Sales Agent.

2. All payments will be without discount, not subject to refund or return and are deemed fully earned upon execution of this Agreement by the Yacht Owner, regardless of loss of Vessel and/or Yacht. Should the final installment not have been received 10 days prior to the sailing date indicated on the Booking Note, unless otherwise agreed to in writing by the Carrier or its Authorized Sales Agent, the Carrier to have the option to cancel the agreement without prejudice to the Yacht Owner's obligation to pay all sums due hereunder.

7 | P a g e

Initials (Yacht Owner)_____



3. Any dues, duties, taxes and charges which under any denomination which may be levied on any basis such as amount of freight, weight or cargo or tonnage of the Yacht shall be paid by the Yacht Owner. The Carrier shall pay dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.

4. It is understood that the Carrier will not insure the Yacht or its value and that it is the sole responsibility of the Yacht Owner to procure and maintain an adequate Marine Cargo Insurance Policy.

5. The Yacht Owner and its customer, consignee, agent, and any other party entitled to possession of the Yacht, shall be liable, jointly and severally, for payment of freight, dead freight, charges, fines, general average contributions, indemnities, compensations, indemnifications or damages under this Booking Note.

**Clause 12: Lien**

The Carrier shall have a lien on the Yacht and any documents relating thereto for all sums payable to the Carrier under this Agreement including, but not limited to, freight, dead freight, claims for damages, general average contributions, and salvage to whomsoever due. The Carrier shall also have a lien against the Yacht Owner on the Yacht and any document relating thereto for all sums due from him to the Carrier under this Agreement. The Carrier may exercise its lien at any time or place in its sole discretion, whether the contractual carriage is completed or not. In any event any lien shall extend to cover the costs of recovering any sums due (including attorney's fees), and for that purpose the Carrier is entitled to utilize self-help and shall have the right to sell the Yacht by public auction or private treaty, without notice to the Yacht Owner. The Carrier's lien is non-possessory and shall survive delivery of the Yacht.

**Clause 13: New Both to Blame Collision Clause**

If the Vessel comes into collision with another vessel as a result of the negligence and fault of both ships, the Yacht Owner will indemnify the Carrier against all loss or liability to the other or non carrying vessel or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying vessel and her owners to the owners of said goods and set off, recouped, or recovered by the other or non-carrying vessel or her owners as part of their claim against the Vessel or Carrier. The foregoing provisions shall also apply where the owners, operators, or those in charge of any vessels or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

**Clause 14: General Average**

General Average shall be stated and adjusted in Amsterdam, Netherlands, according to the York-Antwerp Rules of 1994 and any subsequent modifications thereof. The Yacht Owner's contribution to General Average shall be payable even when such average is the result of a fault, neglect or error in navigation or management of the Carrier or the Vessel's master, crew or pilot.

**Clause 15: New Jason Clause**

1. In the event of accident, danger or damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequences of which the Carrier is not held responsible by statute, contract or otherwise, Yacht Owner and/or Yacht shall contribute with the Carrier and/or Vessel in General Average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the cargo.

2. If a salving ship is owned or operated by the Carrier or the Vessel's operators, salvage shall be paid for as fully as if the salving ship(s) belonged to strangers. Such deposit as the Carrier, vessel or their agents may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the Yacht Owner and/or Yacht before delivery.

**Clause 16: Permits and Licenses**

The Yacht Owner shall procure all necessary permits, licenses and customs forms as required with respect to the Carriage of the Yacht (loading and discharging), including, but not limited to the payment of all customs duties and fees. The Carrier may advance these duties and fees at its sole discretion, said advancement not to constitute a waiver of the Carrier's right to seek reimbursement from Yacht Owner for said advancement and without releasing the Yacht Owner of its responsibility. Any delay or time lost occasioned by the Vessel due to the Yacht Owner's failure to comply with this Clause are to be paid by the Yacht Owner at the demurrage rate.

**Clause 17: Riders**

1. The Carrier has the sole and exclusive right, subject to the provisions of the master charter party and the consent of the Vessel owner and operator, to allow the Yacht Owner to nominate one person, the "Rider," to accompany the Yacht during Ocean Carriage, in which case the Yacht Owner agrees to indemnify, defend, and hold harmless the Carrier and Vessel from and against any claim, liability, loss, damage, costs, and expense whatsoever which the Carrier, Vessel, its servants, agents or independent contractors, and its or their employees may incur or suffer arising out of any act, neglect, omission, or default by that Rider. It is understood, acknowledged and agreed that the Rider is an employee or representative of the Yacht Owner, not of the Carrier or Vessel. The Yacht Owner warrants that the Rider will perform his or her duties and behave in a workmanlike, responsible, and professional manner.

2. In the event that the Yacht Owner shall choose to nominate a Rider during the period of Ocean Carriage, both the Yacht Owner and Rider shall review and execute the relevant Indemnification Agreement. If the Carrier agrees to allow an additional Rider(s) he must complete an additional Indemnification Agreement and be noted on the Insurance Declaration.

3. It is understood and acknowledged that the Master of the Vessel has final discretion to allow a Rider to accompany a Yacht during Ocean Carriage and Carrier shall not be responsible in any manner whatsoever for any damage that may result from the failure to provide carriage to the Rider for whatever reason.

4. The Yacht Owner shall be liable for any and all damages, including physical damage, personal injury and all economic losses to third parties, or to the Rider(s) himself, caused by or contributed to by the Rider(s) designated by the Yacht Owner.

5. The Yacht Owner undertakes, and is required, to procure and maintain an insurance policy to cover the risks that it has assumed in this Clause, in the amount of not less than USD $2,500,000.00, evidence of which shall be submitted not less than seven days before the approximate sailing date, unless otherwise agreed to in this Clause.

8 | Page

Initials (Yacht Owner) _____



writing by the Carrier or its Authorized Sales Agent. Failure to provide such proof of insurance obligates the Carrier to deny passage to the Rider(s) or procure force placed insurance at Yacht Owner's sole expense and cost.

**Clause 18: Supply of Water and Electricity**

Subject to availability, and at the sole discretion of Vessel and her Master, fresh water and electricity may be available during the Voyage. In such event, the provision of fresh water and electricity shall be for the sole account and risk of the Yacht Owner and the Yacht Owner is responsible for providing approved cable-end connectors, hoses and other umbilical attachments and shall provide qualified personnel to effect the connection and disconnection or usage of available hoses or cables. It is expressly understood and agreed that the Vessel's crew may not be engaged for such work and that the Carrier shall in no case be liable for the consequences of any electrical power failures or variations, nor for the suspension or quality of fresh water.

**Clause 19: Security of Ships and Port Facilities**

The Carrier is required to comply with the International Code for the Security of Ships and Port Facilities and all relevant parts of Chapter XI of the International Safety of Life at Sea Convention (SOLAS). To assist in compliance therewith, the Yacht Owner shall provide the Carrier with all requested contact details, citizenship information and any other information the Carrier may require. Any loss, damage, expense, delay or additional cost incurred as a result of the Yacht Owner's failure to comply with this Clause, including, but not limited to, security guards, launches, tugs, port security fees, private security costs, taxes and/or expenses shall be for the account of the Yacht Owner.

**Clause 20: Variation of the Contract**

No agent or servant of the Carrier (including every independent contractor from time to time employed by the Carrier) shall have the power to waive or vary any of the Terms and Conditions of this Agreement unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier or its Authorized Sales Agent.

**Clause 21: Jurisdiction, Applicable Law and Time for Suit**

1. Any claim or dispute arising from this Booking Note which cannot be settled amicably shall be decided according to the laws of the United Kingdom, except as provided elsewhere herein, and in the English High Court of Justice, to the exclusive jurisdiction of which the Carrier and Yacht Owner submit themselves. Whenever US COGSA is at issue this Agreement is to be governed by United States law and the United States District Court for the Central District of California is to have exclusive jurisdiction to hear all disputes in respect thereof.

2. The Carrier shall in any event be discharged from all liability whatsoever in respect of the Yacht under the Booking Note, unless suit is commenced within 1 (one) year after actual delivery of the Yacht or the date upon which delivery of the Yacht was to have originally been effected as designated on the Booking Note.

3. Written notice of claims for loss of or damage to the Yacht occurring or presumed to have occurred while in the custody of the Carrier must be provided in writing to the Carrier at the port of discharge before or at the time of removal of the Yacht by one entitled to delivery. If such notice is not provided, removal shall be prima facie evidence of delivery in good order by Carrier. If such loss or damage is not discernible from visual inspection, the Carrier must be provided written notice within three days of delivery.

**Clause 22: Exemptions and Immunities of Servants and Agents**

No servant or agent of the Carrier (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Yacht Owner for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course and scope of employment and, but without prejudice to the generality of the foregoing provisions in this clause, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Carrier, or to which the Carrier is entitled hereunder, shall also be available and shall extend to protect every such servant or agent of the Carrier and for the benefit of all the foregoing provisions of this clause, the Carrier is, or shall be deemed to be, acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his agents or servants (including independent contractors) and all such persons shall to this extent be or be deemed to be parties to the Agreement.

**Clause 23: Validity**

If any term of this Agreement is held to be null or void for any reason whatsoever, the remainder of this Agreement will remain in full force and effect.

Yacht Owner* (Authorized Agent) signature_____     Date_____

Name (Printed) _____

* The Yacht Owner, or other party who executes this Agreement, warrants, that all statements and disclosures contained on the Booking Note are true and correct, and that he is, or has been provided the legal authority to contract on behalf of, and legally bind to this Agreement, the Person(s) or Entity(s) owning or otherwise entitled to lawful possession of the Yacht.

9|Page

Initials (Yacht Owner)_____



## Banking Information

Please find below the banking information for wire transactions.

Unity Shipping Lines, Inc.

2401 PGA Blvd

Suite 155

Palm Beach Gardens, FL

33410

Phone: (561)784-6700

## Banking Institution:

Bank of America, N.A.

Wire Account:

Account #  8980 2237 8252

A/B/A Routing #  026009593

Swift Code: BOFAUS3N

10 | P a g e

Initials (Yacht Owner)_____



## POWER OF ATTORNEY
### EXPORTER (U.S. PRINCIPAL PARTY IN INTEREST)/FORWARDING AGENT

Know all men by these presents, that, _____, the (USPPI)
(Name of U.S. Principal Party in Interest (USPPI)

organized and doing business under the laws of the State or Country of the <u>United States of America</u>
and having an office and place of business at _____
(US Address of USPPI)

hereby authorizes, <u>Yacht Path</u> the (Forwarding Agent) of <u>2401 PGA Blvd. Suite 155, Palm Beach Gardens, FL</u>
<u>33410</u> to act for and on its behalf as a true and lawful agent and attorney of the U.S. Principal Party in Interest
for and in the name, place and stead of the U.S. Principal Party in Interest, from this date, in the United States
either in writing, electronically, or by other authorized means to:

Act as Forwarding Agent for Export Control, Census Reporting and Customs purposes. Make,
endorse or sign any Shipper's Export Declaration or other documents or to perform any act which may
be required by law or regulation in connection with the exportation or transportation of any
merchandise shipped or consigned by or to the U.S. Principal Party in Interest and to receive or ship
any merchandise on behalf of the above mentioned U.S. Principal Party in Interest.

The U.S. Principal Party in Interest hereby certifies that all statements and information contained in the
documentation provided to the Forwarding Agent (Yacht Path) relating to exportation are true and correct.
Furthermore, the U.S. Principal Party in Interest understands that civil and criminal penalties, may be
imposed for making false or fraudulent statements or for the violation of any United States laws or
regulations on exportation.

This power of attorney is to remain in full force and effect until revocation in writing is duly given by the U.S.
Principal Party in Interest and received by the Forwarding Agent.

_____
(Full Name of USPPI/Authorized Signature)

_____
(U.S. Telephone Number of USPPI)

                      Signature: _____
                      Capacity: _____
                      Passport# or EIN#: _____
                      Date: _____

Please fax to Yacht Path at (561) 455-9135

1 | P a g e

Initials (Yacht Owner)_____

Page 009
Exhibit A



## CHECKLIST

Please use this checklist as a guide for paperwork which Yacht Path will need prior to loading your yacht.

The original Booking Note with your signature and the date. Please make sure that the name and address on the Booking Note are identical to the information contained on the Yacht's Ownership and Official Documents. If not, please make corrections to the Booking Note to match.

The original Terms and Conditions with your initials on all pages, and sign and date the last page.

Yacht Registry and Ownership Information. A copy of your yacht's Official Registry and Ownership Information is required in most foreign countries for customs clearance. If the yacht has not yet been registered following your purchase of it then a copy of the previous owners' Official Registry documents along with your new bill of sale will be acceptable.

Proof of Marine Cargo Insurance Please remit a copy of your marine cargo insurance certificate which covers the risks of on deck ocean carriage and names Yacht Path International™ and Unity Shipping Lines™ as additional assureds, if you will be securing a cargo insurance policy through another insurance company.

Power of Attorney form. Please make sure you have included your Passport Number or your Employer's Identification Number. Also please make sure to include a United States address and full telephonic and electronic contact information.

The Power of Attorney form for Mexican customs, if applicable.

· Copy of Yacht Owner's passport for customs.

Yacht Owner will effect a 20 (twenty) percent down-payment on the Freight payable under this Agreement into Carrier's bank upon execution of this agreement. The remaining 80 (eighty) percent will be due no later than 30 days prior to the departure date indicated on the Booking Note unless otherwise agreed to in writing by the Carrier.

Updates on your yacht's Estimated Time of Arrival will be sent to up to three e-mail addresses. Please let us know if you do not monitor your e-mail on a regular basis so that we can make alternate arrangements.

## PLEASE FAX ALL DOCUMENTS TO 561-455-9135

12 | P a g e

Initials (Yacht Owner)_____

**EXHIBIT  B**

000001

## PATTON MARINE, INC.
SURVEYORS, CONSULTANTS & SUPERVISION
P. O. Box 451135
Miami, Florida 33245-1135

*Our Time and Experience
is our Stock in Trade*

Office: +1 305 648-0823
Fax:    +1 305 648-0827

**Technical Letter**

04 May 2012
File No. 10599-12-A
Page 1 of 3

# "ESCAPE"

### RE: 2001 – 100 ft. Broward Motor Yacht

1.0   This letter is prepared after review of documentation related to the subject yacht, which was water damaged during shipment from Ft. Lauderdale, Florida, USA to Singapore, aboard the ship BBC CAMPANA. Documentation reviewed included:

      a.  AMA Report SGLA-326-PS, dated 30 March 2012 ("AMA Report")
      b.  Broward Docking Plan Hull 267
      c.  Photographs of cargo stow aboard BBC CAMPANA
      d.  Internet photographs of BBC CAMPANA
      e.  BBC Chartering datasheet BBC CAMPANA
      f.  Photographs of interior of yacht "ESCAPE"

1.1   **DISCUSSION – CARGO STOWAGE**

1.2   The AMA Report page 3 indicates, *"We believe that it is very unlikely that the ESCAPE could have been stowed with her bow down."*

1.3   The AMA Report photograph nrs. 8 & 9 with comments indicate the keel blocks used for stowage of the yacht ESCAPE were of uniform size.

1.4   The yacht's Docking Plan clearly shows the keel and skeg are not parallel with the baseline, but rather rise above the baseline from the stern toward the bow.

1.5   Frame nr. 5 is the foremost location where blocks are likely to have been placed under the yacht. The keel rises just forward of this point. Scaling the Docking Plan shows the keel plate is approximately 364 mm above the baseline at frame

© PMI 2012

000002

**Patton Marine Technical Letter**
**"ESCAPE"**
**2001 - 100 ft Broward Motor Yacht**

File Nr. 10599-12-A
04 May 2012
Page 2 of 3

5, a location approx. 24.3 meters forward of the stern.

*Figure 1 – Docking Plan Broward Hull 267*



1.6     Stowing the yacht atop uniform blocks shown in the AMA Report photographs would result in the yacht having a significant "bow down" trim -- that is down by the bow approximately 364 mm.

1.7     The ESCAPE was loaded bow forward atop the hatches of the BBC CAMPANA at Ft. Lauderdale.   It is assumed the upper surfaces of the hatch covers of the ship are parallel to its' own baseline.

1.8     In this stowage position, any stern trim of the ship BBC CAMPANA would act to decrease the bow trim of the yacht ESCAPE which was stowed atop the cargo hatches.

1.9     Calculations show that during shipment aboard the 138.07 meter BBC CAMPANA, the bow of the yacht ESCAPE would remain in a "bow down" trim whenever the cargo ships' trim was less than approximately 2.07 meters by its stern. (Note: A small adjustment in this figure may be required to account for a more precise waterline / LBP length of the BBC CAMPANA.)

1.10     The AMA Report states on page 3,   *"The natural trim of the carrier vessel – BBC CAMPANA, would be either even keel or trimmed by the stern,"* yet does not reference any log book or documentary evidence examined to determine the actual trim of the ship BBC CAMPANA during its passage from Ft. Lauderdale to Singapore.

1.11     The maximum draft of the BBC CAMPANA is reported by the operators to be 8.0 meters.

© PMI 2012

000003

Patton Marine Technical Letter
"ESCAPE"
2001 – 100 ft Broward Motor Yacht

File Nr. 10599-12-A
'04 May 2012
Page 3 of 3

1.12    While it is possible that the trim of the BBC CAMPANA was 2.07 meters by the stern, this is not considered a likely operating trim for this 138 meter ship on a laden passage.

1.13    Accordingly, unless it is otherwise shown that the stern trim of the BBC CAMPANA exceeded 2.07 meters, it is our opinion that the AMA Report is in error. The yacht ESCAPE was originally stowed - and remained in a "bow down" trim or attitude during shipment.

We reserve the right to amend this Report should additional information be provided for our review.

The above Report has been prepared and is submitted without prejudice to the rights and/or obligations of any party.

PATTON MARINE, INC.



Daniel L. Robsham
NAMS – Certified Marine Surveyor
Hull & Machinery Nr. 109-847

© PMI 2012

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV13- 1201 CAS (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
WRIGHT & L'ESTRANGE
John H. L'Estrange, Jr. (SBN 049594)
Alexander T Gruft (SBN 223096)
401 West A Street, Suite 2250
San Diego, CA 92101

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

KH MARINE LTD., a Cayman Islands corporation,

PLAINTIFF(S)

v.

M/V BBC CAMPANA; YACHT PATH
INTERNATIONAL, INC.; UNITY SHIPPING
LINES, INC.,

DEFENDANT(S).

(See attached)

CASE NUMBER

CV13-01201~CAS(SSx)

**SUMMONS**

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __Alexander T Gruft_____, whose address is __Wright & L'Estrange, 401 West A Street, Suite 2250, San Diego, CA 92101_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

FEB 1 9 2013

Dated: _____

Clerk, U.S. District Court

By: ANDRES PEDRO _____
    Deputy Clerk

(Seal of the Court)

1202

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                    SUMMONS

FILED

1
2
3
4
5

WRIGHT & L'ESTRANGE
  John H. L'Estrange, Jr. (SBN 049594)
  (jlestrange@wllawsd.com)
  Alexander T Gruft (SBN 223096)
  (agruft@wllawsd.com)
401 West A Street, Suite 2250
San Diego, California 92101
(619) 231-4844
(619) 231-6710 (fax)

13 FEB 19 PM 4: 21

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

6    Attorneys for Plaintiff KH Marine Ltd.

7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   KH MARINE LTD., a Cayman Island          CV13-01201 -CAS(SSx)
     corporation,                             Civil Action No.
11
                  Plaintiff,                  IN ADMIRALTY
12
                                              COMPLAINT FOR DAMAGES
13           v.

14   M/V BBC CAMPANA, Antigua and
     Barbuda (IMO 9291963), its engines,
15   machinery, appurtenances, etc., *in rem*,
     YACHT PATH INTERNATIONAL,
16   INC., a New York corporation, d/b/a
     Yacht Path Marine Group; and UNITY
17   SHIPPING LINES INC., a Florida
     corporation, *in personam*,
18
                  Defendants.
19

20

21       KH Marine Ltd. ("KH Marine"), a Cayman Islands corporation, alleges

22   against M/V BBC Campana, Antigua and Barbuda (IMO 9291963), its engines,

23   machinery, appurtenances, etc. ("Vessel"), *in rem*; Yacht Path International,

24   Inc., a New York corporation, d/b/a Yacht Path Marine Group, ("Yacht Path"),

25   and Unity Shipping Lines Inc., a Florida corporation ("Unity Shipping"), as

26   follows:

27

28

                       COMPLAINT FOR DAMAGES

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| KH MARINE LTD. | M/V BBC CAMPANA; YACHT PATH INTERNATIONAL, INC.; UNITY SHIPPING LINES, INC. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) |
|---|---|
| Alexander T Gruft          (619) 231-4844<br>WRIGHT & L'ESTRANGE          (619) 231-6710 (fax)<br>401 West A Street, Suite 2250<br>San Diego, CA 92101 | |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** 3,500,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of contract and negligence under Carriage of Goods by Sea Act, 46 U.S.C. §§ 30701-30707.

### VII. NATURE OF SUIT (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:**<br>☐ 463 Alien Detainee | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☒ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 510 Motions to Vacate Sentence | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 530 General | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 535 Death Penalty | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY**<br>☐ 310 Airplane | **PERSONAL PROPERTY**<br>☐ 370 Other Fraud | **Other:**<br>☐ 540 Mandamus/Other | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 550 Civil Rights | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 555 Prison Condition | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 560 Civil Detainee Conditions of Confinement | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 340 Marine | **BANKRUPTCY** | **FORFEITURE/PENALTY** | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 690 Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY:  Case Number:   **CV13-01201**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to Item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | George Town, Cayman Islands |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Florida, New York |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
NOTE: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Singapore |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: February 19, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |